Argued November 22, 1929; affirmed January 21; rehearing denied
February 18, 1930

## MEADOWS *v.* MEADOWS
(283 P. 1117)

*Guy C. H. Corliss* of Portland (Thomas Mannix of Portland on the brief) for appellant.

*R. C. Bradshaw* of Portland (Joseph, Haney & Littlefield of Portland on the brief) for respondent.

ROSSMAN, J. At the trial the plaintiff, in support of his accusations, offered testimony that (1) the defendant had endeavored to have him arrested by federal prohibition agents upon a false charge of having violated the national prohibition laws, (2) that the defendant had been unduly familiar with other men, (3) that she made vile and opprobious remarks concerning his loss of one of his legs, (4) that this affliction of his was the real reason why she desired a divorce, and (5) that she drank intoxicating liquor.

Besides offering testimony to the effect that the foregoing charges were untrue, the defendant presented evidence that about a year after one of plaintiff's legs was amputated he refused to continue in employment, became engaged in the unlawful sale and manufacture of intoxicating liquor, became associated continuously with evil companions, repeatedly failed to return home until the early morning hours, made use at times of the family home for the distribution of liquor, neglected the defendant and their boy, became cynical and abusive, and that upon one occasion he administered upon her a beating.

The transcript of testimony covers more than 250 pages. We do not believe that this occasion requires that we should set forth a detailed review of it; we shall, therefore, content ourselves with a statement of our conclusions. We are convinced that the evidence does not support the plaintiff's charge that the defendant attempted to have him incarcerated upon a false charge, contrived by herself, that he violated the liquor

prohibition laws. The testimony in support of this count came almost entirely from a woman who had been employed for less than four weeks in the household of the Meadows at a time when the defendant needed assistance, due to a broken ankle. Although this witness was unacquainted with either of the parties, prior to the engagement of her services, she testified that by the second week of her employment she had so far won the confidence of Mrs. Meadows that the latter confided in her her plans for a divorce, directed her to go to the federal prohibition agents, enlist their support, and lay before them false accusations concerning the plaintiff. The witness testified, that, without hesitation and without any extra compensation, she did as she was directed, and that the federal officers became willing participants in this scheme, apparently for no purpose except to provide the defendant with grounds for a divorce. In fact, if her testimony is to be credited, these officers, including an attorney in the service of the federal government, agreed to "plant liquor" upon the plaintiff's premises, or "frame" him upon a charge involving a woman, so as to bring about his arrest and prosecution. Strangely enough these men agreed to do all of this without asking for any compensation, and without any prior acquaintanceship with the defendant or this witness. The latter admits that while she was making these alleged visits to these offices, she informed the plaintiff of her actions. To us it seems that this testimony, in several particulars, discredits itself. It is contradicted not only by the defendant, but also by the federal officers whom the witness testified had become willing participants in this conspiracy. It is our opinion that the testimony offered in support of this count is untrue. One of the other charges, mentioned above,

is to the effect that the defendant made vile remarks concerning the plaintiff's loss of one of his limbs and that she became dissatisfied with him on account of his crippled condition. Testimony in support of this charge came from the plaintiff and the witness, whom we have just mentioned. Upon the other hand Mr. Meadows testified that while he was in the hospital upon the three occasions necessitated by his illness, and also during the period of his convalescence, all of which consumed more than two years, his wife's treatment of him was "very good," "fine." We quote from his testimony further thus:

"Q. When you were in the hospital here, she visited you, didn't she, every day? A. Yes; she was at the hospital every day.

"Q. And did everything she could? A. Absolutely.

"Q. Did you know of her to fall down in any way in the way of obligations towards you during those trying experiences? A. You mean during my sickness?

"Q. Yes. A. Never did.

"Q. She was a good, true woman in every sense of the word? A. Absolutely.

He also concedes that in order to meet the expenses caused by his long illness the defendant remained steadily employed, that she sold a piece of property she had acquired prior to marriage, and used the proceeds of $1,400 in family expenses. He testified that after he had left the hospital upon one of these occasions, the defendant took him to her parents' home, where he received excellent treatment by his wife's mother while the defendant worked for a salary. Practically all of the neighbors, where the parties lived for eight years, and some of their intimate friends, testified that the defendant was a good wife, and an excellent mother; we quote the following description of the defendant as given by one of these

witnesses: "A very loyal wife, she is a devoted mother, and a good daughter. She is a mighty good neighbor." We have carefully reviewed the testimony pertaining to this charge and have concluded that it preponderates in favor of the defendant.

■ The charge that the defendant was indiscreet in her conduct with men, two of whom the plaintiff named, we likewise feel is unsupported by the evidence. After the plaintiff had offered all of the evidence he possessed in support of this charge the defendant's counsel inquired of him whether he believed that his wife had committed any immoral act with any man. The answer, which was evasive, provoked an argument, which was finally concluded by the court's observation, "there certainly has not been any evidence, so far, of any improper relations with any man that I can see." The plaintiff's charges were specific in regard to only two men; one of these was a Mr. Nichols. While the defendant was upon the witness stand counsel for the plaintiff thus addressed her: "Now, I want to say, personally, that I don't believe there was anything wrong between you and Mr. Nichols; I don't want you to misunderstand me * * *." After a painstaking reading of the transcript of testimony, we are satisfied that the plaintiff's charge that the defendant conducted herself improperly with men is unwarranted.

Concluding the plaintiff's charges against the defendant, we have found no evidence which would warrant a finding that the defendant, at any time, violated her marriage vows.

■ We are convinced, however, that about a year and a half after the plaintiff unfortunately sustained the loss of one of his legs, he became engaged in the unlawful sale of intoxicating liquor, and that at the time

when this suit was filed he was engaged in the same pursuit. The evidence leads us to believe that the plaintiff's participation in this enterprise caused him to mingle with an undesirable element and caused him to neglect his wife and child; he frequented card rooms, played in poker games, and gave his time otherwise to the liquor business. Evidence, which we believe is reliable, indicates that at times the plaintiff used his home in connection with the distribution of liquor, and that the defendant suffered anxiety and humiliation thereby. Further evidence, creditable in character, is to the effect that after the plaintiff left his former employments and became engaged in the illegal liquor traffic his demeanor towards his wife changed and that his conduct towards her became abusive. The defendant, whom the plaintiff described as refined and cultured, testified: "I am scared to death of raids, and everything like that, and I have just been a nervous wreck almost from it." We are satisfied that the plaintiff's conduct toward the defendant constituted cruel and inhuman treatment which rendered her life burdensome.

The above states our conclusions upon the issues which we believe are controlling. It follows that in our opinion the defendant is entitled to relief against the plaintiff. We adopt the decree of the circuit court which awarded to the defendant a divorce, custody of the child, $40 a month for its support, $2,000 alimony and the family home. It will be observed from the foregoing findings that during the 13 years in which the parties were married to each other the defendant's wages and savings contributed much towards the family income. The evidence indicates that the plaintiff is well able to pay the $2,000 ordered below; we believe the order just.

The defendant's counsel have had no allowance of attorney's fees for their service in this court and the defendant is unable to pay them. Our right to make an award is conceded by the plaintiff and settled by *Thomsen v. Thomsen,* 128 Or. 622 (275 P. 673). We believe an award of $250 is proper. Affirmed.

COSHOW, C. J., MCBRIDE and RAND, JJ., concur.